In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2541

MICHAEL J. DEGUELLE,

*Plaintiff-Appellant,*

*v.*

KRISTEN J. CAMILLI, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 10-CV-103-JPS — **J.P. Stadtmueller**, *Judge.*

ARGUED JULY 9, 2013 — DECIDED AUGUST 1, 2013

Before EASTERBROOK, *Chief Judge,* and POSNER and
WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, DeGuelle, an accountant, was employed between 1997 and 2009 in the tax department of S.C. Johnson & Son, Inc., a large Wisconsin manufacturer of cleaning supplies. He alleges that while employed there he discovered that the company had committed tax fraud. The company fired him, then sued him in a Wisconsin state court for breach of contract, conversion, and

defamation, all arising from his having taken confidential corporate tax documents with him when he was fired and having publicly accused the company, in the media (a newspaper), of tax fraud. He counterclaimed for wrongful termination and breach of contract, claiming the company had fired him in retaliation for his opposing the alleged tax fraud. The company moved for summary judgment, attaching an affidavit from a tax lawyer at Kirkland & Ellis denying there had been any tax fraud. DeGuelle, litigating pro se, filed no counteraffidavits, and so the judge granted summary judgment in favor of S.C. Johnson & Son both on the company's claims and DeGuelle's counterclaims. The Wisconsin court of appeals affirmed a month before the present appeal was argued. *S.C. Johnson & Son, Inc. v. DeGuelle*, No. 2011AP2427, 2013 WL 2420925 (Wis. App. June 5, 2013) (per curiam).

DeGuelle had filed the present suit in federal district court against S.C. Johnson & Son long before the Wisconsin suit was dismissed. The district court had dismissed the suit for failure to state a claim, but we had reversed, 664 F.3d 192 (7th Cir. 2011), and remanded the case to the district court. The federal suit charges both federal and state violations, but all growing out of the alleged tax fraud. If there was no fraud, the present suit is groundless, as noted in our previous opinion. *Id*. at 200. On remand the district judge, after the trial court in Wisconsin granted summary judgment in favor of the company, did likewise. His ground was that the finding by the Wisconsin court that there had been no tax fraud bound him by the doctrine of collateral estoppel (a term giving way to "issue preclusion"). If his application of the doctrine was sound, he was right to dismiss because, as we said, if there was no tax fraud there is no merit to this

suit. He was right even though he dismissed the suit before the state appellate court decided DeGuelle's appeal. The pendency of an appeal doesn't suspend the preclusive effect of the judgment being appealed. *Virnich v. Vorwald*, 664 F.3d 206, 216 and n. 4 (7th Cir. 2011) (Wisconsin law).

As collateral estoppel has traditionally been understood, the resolution of an issue in a previous litigation between the same parties (or parties "in privity" with them, but that is not involved in this case) normally is conclusive of the issue in a subsequent litigation. But there are conditions. The party against whom the issue had been resolved must have had, first, a "full and fair opportunity" to litigate the issue in the previous suit (where "opportunity" includes incentive—the parties could foresee that the same issue might arise in a future litigation in which the winner would assert collateral estoppel), and, second, a meaningful opportunity to appeal the resolution of the issue. A party would not have had such an opportunity if for example the resolution had been inessential to the decision of the trial court, and therefore either ignored by the parties or treated by the appellate court as moot. See, e.g., *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *United States v. Kashamu*, 656 F.3d 679, 685–86 (7th Cir. 2011); *In re Catt*, 368 F.3d 789, 791–92 (7th Cir. 2004); *Bell v. Dillard Dep't Stores, Inc.*, 85 F.3d 1451, 1456 (10th Cir. 1996). But when the conditions for applying collateral estoppel are satisfied, "the doctrine promotes important goals: it allows a party only one opportunity to litigate an issue thereby conserving the time and resources of the parties and the court; promotes the finality of judgments; preserves the integrity of the judicial system by eliminating inconsistent results; and ensures that a party not be able to relitigate issues already

decided against it in prior litigation." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996).

There is no question of lack of opportunity or incentive to appeal—DeGuelle got a ruling from the Wisconsin appellate court on the trial court's determination regarding tax fraud. But he argues that he was denied a full and fair hearing in the trial court (that is, an adequate hearing—"full and fair" is a redundant expression) by being denied an opportunity to conduct discovery without which the tax expert he had hired to counter the Kirkland & Ellis tax expert could not prepare a proper affidavit. The argument is groundless. He'd been allowed to conduct discovery and had done so. But because he had failed to respect confidentiality orders, the judge directed that confidential financial records of S.C. Johnson & Son be sent directly to DeGuelle's expert—and this was done—with the proviso that while the expert could discuss the preparation of his expert opinion, and therefore the pertinent documents, with DeGuelle, he couldn't show him the documents without the judge's permission. DeGuelle responded by ordering his expert not to prepare an expert report. That unreasonable behavior could not have justified the judge in rejecting the Kirkland lawyer's expert opinion—as demanded by DeGuelle on the false ground that the judge had precluded his filing an opinion by his tax expert. In all likelihood his expert after reviewing the documents concluded that there was no evidence of tax fraud. But this inference is not necessary to justify the judge's actions.

Were the doctrine of collateral estoppel as compact as we have thus far assumed, requiring only that the finding sought to be given collateral estoppel effect in subsequent

litigation between the same parties (or their privies) have been rendered after an opportunity given for (and an incentive to demand) an adequate hearing and for challenging the finding in an appeal, we could stop here and affirm. For the Wisconsin appellate court has now determined that the Kirkland lawyer's affidavit, plus other evidence, "establish[es] that [S.C. Johnson & Son] did not engage in any tax fraud or crimes as DeGuelle publicly stated. The burden to prove criminal fraud was on DeGuelle, and he submitted no counteraffidavits. As stated by the trial court, DeGuelle's claims were unsubstantiated." *S.C. Johnson & Son, Inc. v. DeGuelle*, *supra*, 2013 WL 2420925 at ¶ 25. (The reference to "publicly stated" is to the Johnson company's defamation claim.) That determination by the appellate court is itself entitled to collateral estoppel effect; and once that effect is given to the appellate court's determination that the trial court had properly rejected DeGuelle's claim, any shadow over the procedures employed by that court is lifted.

But we can't stop here. We are required to apply not our own notions of collateral estoppel, or the federal common law of collateral estoppel (illustrated by the federal cases we cited earlier—for "the preclusive effect of a federal-court judgment is determined by federal common law," *Taylor v. Sturgell*, *supra*, 553 U.S. at 891), but Wisconsin's doctrine of collateral estoppel. True, the full faith and credit clause (U.S. Const. Art. IV, § 1) requires only states to recognize and enforce the judgments of the courts of other states, *Franchise Tax Board v. Hyatt*, 538 U.S. 488, 494 (2003); *Rosin v. Monken*, 599 F.3d 574, 576–77 (7th Cir. 2010), and thus give those judgments the same preclusive force they would enjoy in the originating state. *Baker v. General Motors Corp.*, 522 U.S. 222, 233–34 (1998). But the statute that implements the full faith

and credit clause, 28 U.S.C. § 1738, goes further than the constitutional clause and requires federal as well as state courts to give state court judgments the same preclusive effect that the state courts that issued the judgments would give them. E.g., *Allen v. McCurry*, 449 U.S. 90, 95–96 (1980); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006); *FPL Energy Maine Hydro LLC v. FERC*, 551 F.3d 58, 63 n. 2 (1st Cir. 2008). And Wisconsin, like most states if one may judge from the *Restatement (Second) of Judgments* § 27 (1982), is not content with a simple, straightforward test of collateral estoppel, the kind of test, sketched above, that we would find attractive as an original matter.

Instead Wisconsin's supreme court has adopted a five-factor "test" for deciding whether to give a finding collateral estoppel effect. *In re Estate of Rille ex rel. Rille*, 728 N.W.2d 693, 707 (Wis. 2007). No weight is assigned to any factor; the weighting is in the discretion of the trial court. *Id.* at 707. (Such a multifactor test is thus more accurately termed a multifactor list. *United States v. Rosales*, 716 F.3d 996, 997 (7th Cir. 2013).)

The factors are:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

    5) Are matters of public policy and individual circum-
       stances involved that would render the application of
       collateral estoppel to be fundamentally unfair, includ-
       ing inadequate opportunity or incentive to obtain a full
       and fair adjudication in the initial action?

*In re Estate of Rille ex rel. Rille*, *supra*, 728 N.W.2d at 707.

The first factor gestures, a little mysteriously, to the re-
quirement that the loser have been able to appeal the ad-
verse ruling sought to be used against him; the requirement
is diluted in the Wisconsin supreme court's formulation by
the trial judge's having discretion as to how heavily to
weight it. Factor 2 we do not understand at all. Factors 3 and
4 are aspects of the requirement that the loser have had an
opportunity for an adequate hearing in the first proceeding.
Factor 5, while also related to the adequacy of that hearing,
opens a Pandora's Box by invoking public policy, individual
circumstances, and fundamental fairness. So the five-factor
test is really eight factors. Would we could stop with eight!
We can't; for after listing the eight factors the opinion states
that "these enumerated factors are illustrative; they are not
exclusive or dispositive…. The final decision whether the
doctrine of issue preclusion [collateral estoppel] should be
applied rests on the [trial] court's sense of justice and equi-
ty." *Id*. The "test" thus is formless. (And what by the way is
the difference between "justice" and "equity"?)

Later in the opinion we learn that in applying factor 5 the
trial court must "'balance competing goals of judicial effi-
ciency and finality, protection against repetitious or harass-
ing litigation, and the right to litigate one's claims.'" *Id*. at
712, quoting *Michelle T. v. Crozier*, 495 N.W.2d 327, 330 (Wis.
1993). That brings the number of factors to 11, though in a

later case we learn that "the overarching task" in applying the doctrine of collateral estoppel is "to make a holistic, discretionary determination regarding fundamental fairness." *Aldrich v. Labor & Industry Review Comm'n*, 814 N.W.2d 433, 458 (Wis. 2012). Holistic analysis is the opposite of dissecting an issue into parts.

Cases from other states applying multifactor tests abound, but they tend to rely on the *Restatement*'s test, which is similar to Wisconsin's but less baroque. See, e.g., *Allen v. V & A Bros., Inc.*, 26 A.3d 430, 444–45 (N.J. 2011); *Elliott v. State*, 247 P.3d 501, 503–05 (Wyo. 2011); *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–47 and n. 2 (Mich. 2004); *Clusiau v. Clusiau Enterprises, Inc.*, 236 P.3d 1194, 1198–99 (Ariz. App. 2010). Section 28 of the *Restatement of Judgments* lists four factors that upon inspection expand to eight, but the list is more clearly written and narrower than Wisconsin's; it does not include fundamental fairness and it is not open-ended. See also *Restatement*, *supra*, §§ 27, 29.

Conceivably the reference in the Wisconsin decisions to "fundamental fairness" echoes or alludes to cases in which a state is asked in the name of comity—the mutual respect of sovereigns—to give collateral estoppel effect to a finding by a court in a foreign country. The full faith and credit clause does not obligate states to respect foreign judgments beyond what comity requires. See *United States v. Kashamu*, *supra*, 656 F.3d at 683; *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593–94 (5th Cir. 2003); *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994).

Free-wheeling as the Wisconsin courts' formulation of the doctrine of collateral estoppel is, none of its curlicues

provide a basis for doubting that the rulings by the Wisconsin trial court and appellate court are entitled to collateral estoppel effect in this case. The only effect of the curlicues has been to inveigle DeGuelle into making frivolous arguments, such as that he should be given a break because he was pro se in the critical stage of the Wisconsin litigation, as he is in the present case. He was pro se by choice, as far as appears, rather than by reason of indigence. And the idea that litigating pro se should insulate a litigant from application of the collateral estoppel doctrine, or, more broadly, the doctrine of res judicata, of which collateral estoppel is an aspect, is absurd. See *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991); *Davis v. U.S. Steel Supply*, 688 F.2d 166, 177 (3d Cir. 1982) (en banc); *Noble v. U.S. Postal Service*, 93 M.S.P.R. 693, 698 (2003). No doubt a judge might confuse a pro se litigant to the point of denying him an adequate hearing, but that didn't happen in this case. The Wisconsin trial judge made clear to DeGuelle that he'd have to submit an affidavit countering the affidavit of the company's tax expert in order to survive summary judgment. He had hired an expert who duly received the documents sought by DeGuelle in discovery. His refusal to allow his expert to file an affidavit, a refusal suggesting that the expert found no evidence of the alleged tax fraud, can't be attributed to the judge.

DeGuelle's further argument that collateral estoppel should not apply lest it deter whistleblowers from suing is also frivolous. It amounts to saying that whistleblowers should be exempt from preclusion and thus be allowed to file identical cases against the same parties in succession. Not even Wisconsin's open-ended test would abide such a blow to finality.

DeGuelle makes other arguments, but they are untimely as well as patently without merit, so we'll stop here, with a warning that if DeGuelle persists in harassing S.C. Johnson & Son with litigation over his claims, now definitively rejected, based on allegations of tax fraud, he will be courting sanctions.

AFFIRMED.