In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2822

KENNETH A. CARTER, et al.,

*Petitioners-Appellants,*

*v.*

COMMISSIONER OF INTERNAL
REVENUE, et al.,

*Respondents-Appellees.*

Appeal from the
United States Tax Court
No. 002909-10R

SUBMITTED FEBRUARY 14, 2014[*] — DECIDED MARCH 25, 2014

Before WOOD, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges*.

---

[*] This successive appeal has been submitted to the original panel pursuant
to Operating Procedure 6(b). After reviewing the briefs and the record, the
panel is unanimously of the view that oral argument is unnecessary.
Accordingly, the appeal has been submitted on the briefs and the record
alone. *See* Fed. R. App. P. 34(a).

MANION, *Circuit Judge*. A group of Finkl employees filed a lawsuit in the United States Tax Court alleging that a change in their defined pension plan violated the Employment Retirement Income Security Act, the Internal Revenue Code, or contractual anti-cutback[1] provisions of the plan. The Tax Court concluded that the employees' claims were collaterally estopped by our decision in *Carter v. Pension Plan of A. Finkl & Sons Co.*, 654 F.3d 719 (7th Cir. 2011). We affirm.

## I. Facts and procedural history

A. Finkl & Sons, Co., ("Finkl") is a Delaware corporation based in Chicago that produces industrial steel products. In 2006, Finkl initiated the process of terminating its defined benefit pension plan (the "Plan") under the Employment Retirement Income Security Act of 1974 ("ERISA") apparently in anticipation of merging with another company. *Carter v. Pension Plan of A. Finkl & Sons Co.*, 654 F.3d 719, 721 (7th Cir. 2011).

As part of the termination process, the Plan was amended on January 28, 2008, to include Section 11.6, which was a special provision for distributions to participants in connection with the contemplated termination. The special provision was to apply if the participant "ha[d] not begun to receive a benefit under the Plan at the time benefits are to be distributed on account of termination of the Plan."

On May 9, 2008, Finkl decided not to terminate the Plan due to "a significant number of issues" that had arisen during the

---

[1] "Anti-cutback" provisions prohibit an amendment that reduces accrued benefits.

termination process. Section 11.6, the special provision in the January 28, 2008, amendment providing for distributions in connection with the contemplated termination, was deleted from the Plan by an amendment on May 27, 2008. On June 27, 2008, Finkl notified the Commissioner of Internal Revenue (the "Commissioner") that the Plan was not going to terminate.

On December 15, 2008, seven Finkl employees ("appellants") filed a complaint against the Plan, its fiduciaries, and Finkl pursuant to 29 U.S.C. § 1132.[2] Appellants' operative filing alleged that they were entitled to an immediate distribution of benefits while they were still working for Finkl and that Finkl's adoption of Amendment 2 repealing the Special February 28, 2007, Termination Provisions of Section 11.6 violated the anti-cutback terms of the Plan, I.R.C. § 411(d)(6), and ERISA § 204(g), 29 U.S.C. § 1054(g). [AJA59].

On December 23, 2008, Finkl requested a favorable determination by the Commissioner that the Plan continued to qualify for favorable tax treatment under Code § 401(a). Finkl apprised

---

[2]  Appellant Robert J. Kurek is now retired and is receiving benefits under the Plan. The Commissioner argues that because Kurek is now receiving the relief he sought from this suit, his claims are moot, so we should dismiss him from this appeal. See Comm'r Br. 5, 19–20. We disagree that Kurek's claims are moot because although the general relief sought by this action is the receipt of benefits under the Plan, if appellants are successful in this action they will likely seek interest from the date the benefits should have issued, so Kurek may still have a pecuniary interest in the disposition of this case. Consequently, we decline to dismiss Kurek from this appeal. We have also been notified that appellant John McFawn no longer desires to participate in the instant appeal. Pursuant to Fed. R. App. P. 42(b), we dismiss McFawn from this case. See Reply Br. (cover page).

the Commissioner of the pending litigation (*Carter I*) wherein appellants were arguing that the May 27, 2008, amendment deleting Section 11.6 violated the anti-cutback provision in I.R.C. § 411. They claimed they were entitled to receive pension benefits under the January 28, 2008, amendment while they continued to work. Finkl stated its position that the May 27, 2008, amendment was not a prohibited cutback because it deleted a provision that was superfluous since the Plan did not terminate.

On November 2, 2009, the Commissioner sent Finkl a favorable determination letter that the Plan had retained its tax qualified status. On February 1, 2010, appellants challenged the Commissioner's determination by filing a petition for a declaratory judgment against the Commissioner under I.R.C. § 7476 in the United States Tax Court. Finkl asserted in its answer that the district court had granted summary judgment in *Carter I,* and in doing so rejected the arguments which the appellants had presented in their Tax Court petition. *See Carter v. Pension Plan of A. Finkl & Sons Co. for Eligible Office Employees,* No. 08 C 7169, 2010 WL 1930133 (N.D. Ill. May 12, 2010).

In August 2011, we affirmed the district court's award of summary judgment to Finkl. *Carter v. Pension Plan of A. Finkl & Sons Co.,* 654 F.3d 719 (7th Cir. 2011). After we denied appellants' petition for rehearing *en banc,* they advised the Commissioner and Finkl that they intended to pursue their Tax Court proceeding and Finkl and the Commissioner amended their pleadings to assert the *Carter I* decision as an affirmative defense. Finkl and the Commissioner also argued that collateral estoppel precluded appellants from re-litigating the anti-cutback issue. Due to the procedural cloud, the Tax Court

bifurcated the procedure from the merits and considered the procedural issues first.

On May 16, 2013, the Tax Court ruled that appellants were collaterally estopped by our decision in *Carter I* from challenging the Commissioner's November 2, 2009, determination letter, which concluded that the Plan had not been terminated and that it continued to qualify for favorable tax treatment under I.R.C. § 401(a). *Carter v. CIR,* T.C. Memo. 2013-124 (May 16, 2013). Appellants timely appeal.

## II. Analysis

### A. Standard of Review

We review the Tax Court's factual determinations and the application of legal principles to factual determinations for clear error, and we review legal determinations *de novo. Square D Co. & Subsidiaries v. Comm'r,* 438 F.3d 739, 743 (7th Cir. 2006). Additionally, "[w]e view the evidence in the light most favorable to the [T]ax [C]ourt finding." *Id.* Whether an issue was litigated and resolved in a prior action is, of course, a question of law that we review *de novo. In re Davis,* 638 F.3d 549, 553 (7th Cir. 2011). To determine whether an issue was litigated and resolved in a prior action, we consider established principles of preclusion in light of "the materials submitted, the record, pleadings, exhibits and transcripts" from the prior litigation. *E.B. Harper & Co., Inc. v. Nortek, Inc.,* 104 F.3d 913, 922 (7th Cir. 1997) (citations omitted).

### B. Is appellants' Tax Court case barred by collateral estoppel?

The Commissioner and Finkl contend that this case is barred by collateral estoppel. Under the doctrine of collateral estoppel (also known as issue preclusion), "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). "The party against whom the issue had been resolved must have had, first, a 'full and fair opportunity' to litigate the issue in the previous suit … and, second, a meaningful opportunity to appeal the resolution of the issue." *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013) (citations omitted). But collateral estoppel is not confined to the same parties; the Commissioner may also assert collateral estoppel as an affirmative defense even when it was not a party to the prior federal court proceeding.[3] *Brotman v. Comm'r,* 105 T.C. 141, 148 (1995).

In light of these standards, we consider whether our decision in *Carter I* collaterally estops the instant proceeding in the Tax Court. We note from the outset that the appellants had a full and fair opportunity (which they exercised) to litigate the issue of the Plan's termination in the previous *Carter I* litiga-

---

[3] "Mutuality of parties is no longer a prerequisite for the application of collateral estoppel." *Crowder v. Lash,* 687 F.2d 996, 1010 n.13 (7th Cir. 1982) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327–28 (1979)). Although, in fact, here the appellants and Finkl were both parties to the prior case.

tion; final judgment was entered in that litigation; and appellants had an opportunity to appeal, which they exercised by appealing to this court and by filing a petition for rehearing *en banc* (which we denied). Appellants declined to exercise their right to file a petition for a writ of certiorari in the United States Supreme Court. Thus, the only dispute is whether the issue appellants seek resolution of in the Tax Court was the one conclusively decided in *Carter I.*

In *Carter I*, we concluded that Finkl initiated—but did not complete—the process of terminating its employee benefits plan. 654 F.3d at 721. In reaching that conclusion, we agreed with the district court that the immediate payment of pension benefits that the appellants sought while still working for Finkl was not a right protected by ERISA because the Plan did not terminate. *Id.* And we held that the pre-retirement distribution of pension benefits under the January 28, 2008, amendment was not an accrued benefit under ERISA § 204(g), 29 U.S.C. § 1054(g) and 26 U.S.C. § 411(d)(6). *Id.* at 725. We further held that nothing in ERISA, related regulations, or case law suggests that the payment the appellants sought "would qualify as an 'optional form of benefit'" under ERISA. *Id.* at 726. Finally, we held that the anti-cutback clause in Section 11.1(a) of the Plan applied only to pension benefits already accrued, and there was no accrued benefit under the January 28, 2008, amendment because the Plan had not terminated. *Id.* Because the Commissioner considered the Plan to be ongoing and fully compliant with ERISA, we held that appellants' right to an annuity while working at Finkl was not a right protected by ERISA, the I.R.C., or the Plan's anti-cutback clause. *Id.* at 727–28.

In 2010, while appellants were litigating *Carter I* against Finkl and the Plan in Article III courts, they simultaneously sued the Commissioner in the Tax Court to hedge their bets. In 2012, after failing to prevail in this court in *Carter I,* appellants revived their dormant Tax Court proceeding. The Special Trial Judge reviewed appellants' arguments from *Carter I* and held, *inter alia*, that "the record shows that the Court of Appeals considered, and rejected, the identical argument that petitioners now present to this Court on brief." The Special Trial Judge then concluded that appellants' Tax Court claims were collaterally estopped.

The Tax Court is correct. This scenario is textbook collateral estoppel. In *Carter I* we concluded that Finkl did not terminate its Plan. Appellants argue that

> the Opinion of [the Tax Court] did not address, did not decide and did not need to decide whether 29 C.F.R. sec. 4041.28(a) mandated, upon and subsequent to Finkl's adoption of Amendment #1, that it proceed with the termination by distributing its assets by a date certain (rather than instead adopting Amendment #2) as a condition of retaining qualified status.

Appellants' Br. 18. In other words, appellants want the Tax Court to consider and conclude that the Commissioner's November 2, 2009, letter acknowledging the continuation of the Plan was an erroneous conclusion of law. But by concluding in *Carter I* that the Plan *did not terminate*, we rejected *any* subsequent challenge to the Plan's continuation—the precise challenge appellants assert here. For appellants to secure any

relief from the Tax Court, they must establish that Finkl terminated its Plan. But such a ruling would directly contradict our holding in *Carter I.* 654 F.3d at 721. In short, collateral estoppel applies in the Tax Court.

So the appellants have exercised their "full and fair opportunity" to litigate the issue of whether Finkl's Plan terminated in the previous suit and had a meaningful opportunity to appeal the resolution of the issue (which they exercised by filing suit in the district court, appealing to this court, filing a petition for rehearing *en banc,* and could have exercised further had they sought certiorari). *DeGuelle,* 724 F.3d at 935. Therefore, collateral estoppel precludes appellants from re-litigating in the Tax Court the issue of whether the Plan terminated.

### III. Conclusion

In *Carter I,* we concluded that the Plan did not terminate. Appellants possessed—and exercised—a full and fair opportunity in *Carter I* to litigate the issue it seeks to have adjudicated in the Tax Court: specifically, whether the Plan terminated. However, appellants' unsuccessful action in *Carter I* collaterally estops the Tax Court from making that determination. Appellants are precluded from re-litigating the issue of whether the Plan terminated. For these reasons, we AFFIRM the decision of the United States Tax Court.