NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 29, 2014[*]
Decided October 17, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 13-3755, 13-3756, 13-3757, 13-3758
    & 13-3759

| | |
|---|---|
| PAUL W. GRAFFIA, et al., | Appeals from the United States Tax Court. |
| *Petitioners–Appellants,* | |
| | Nos. 015659-09, 015865-09, 004044-11, |
| *v.* | 004054-11 & 004066-11 |
| COMMISSIONER OF INTERNAL REVENUE, | David Gustafson, |
| *Respondent–Appellee.* | *Judge.* |

## O R D E R

In these consolidated appeals, the Graffia family—Paul and Marilynne, along with their adult son David and his wife Amy—challenge the Tax Court's ruling that collectively they have a tax deficiency of $223,469 for tax years 2005 through 2007 and owe a $44,693 penalty. The deficiency principally results from flow-through losses that

---

[*]After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus these appeals are submitted on the briefs and records. *See* FED. R. APP. P. 34(a)(2)(C).

Marilynne, David, and Amy attributed to Preferred Capital Services Corporation, an S corporation operated by Paul and owned by Marilynne and David. After a trial, the Tax Court found that these losses are based on sham transactions. The court also concluded that the Graffias had failed to prove their entitlement to several other tax benefits they had obtained. The Graffias appeal but mostly assert that the Tax Court was compelled to accept their evidence at face value. We conclude that the Graffias' appeals are frivolous and affirm the judgment.

We recount the facts as found by the Tax Court. Preferred Capital was incorporated in 2001. Paul, holding himself out as the company's representative, developed what he called the "Tenant Improvement Program." A business associate of Paul's testified that the Program obtains funding for construction projects when "conventional" financing is unavailable; Paul described it as a "marketing tool" that he used to obtain business for a construction company owned by longtime friend Thomas Olson in exchange for consulting fees. Apparently, none of the fees generated by Paul went to Preferred Capital during the tax years in question. The Graffias stipulated for purposes of trial that, from 2005 through 2007, the company had no bank account, credit card, cash receipts, disbursements, or customer invoices.

Beginning in 2004, however, several agreements were executed between the Graffias, Preferred Capital, Olson, and two companies owned by Olson. These agreements had no economic substance: The parties' purported obligations cancelled each other out, and no principal or interest payments ever were made on the numerous promissory notes they exchanged. Nonetheless, Preferred Capital reported that these phony transactions had generated net losses totaling more than $1 million. This sham red ink was reported as flow-through losses by Marilynne (who filed separately from Paul) and by David and Amy (who filed joint returns). The Internal Revenue Service learned of these maneuvers and issued notices of deficiency, telling the Graffias they had failed to establish entitlement to the flow-through losses. *See* 26 U.S.C. § 1366(a), (b). The notices of deficiency also adjusted for income that David and Amy had not reported from sales of stock, *see id.* §§ 63, 61, and further challenged net operating losses claimed by Paul and Marilynne and business expenses claimed by Paul alone, *see id.* §§ 172(a), 162(a).

The Graffias filed petitions in the Tax Court contesting the proposed deficiencies and penalties. About a year into the pretrial proceedings, their first lawyer withdrew because of unspecified irreconcilable differences. Another lawyer stepped in and, two and a half months before trial, asked the Tax Court for leave to withdraw because the

Graffias had ceased paying him for his work. The request was granted. At a hearing the day before trial, the Graffias, now pro se, sought a continuance to further review draft stipulations that the parties had been negotiating. *See* TAX CT. R. 91(a). The Tax Court denied the request, noting that the trial had been scheduled for six months and the draft stipulations available to the Graffias for approximately two months.

The Graffias approved the draft stipulations and proceeded to trial, which lasted two days. They submitted as exhibits a handful of documents and called five witnesses: Paul, Olson, and three of Paul's business associates, who generally recounted their business dealings with Paul. After a round of posttrial briefing, the Tax Court ruled that the Graffias had not met their burden of proving that the Commissioner's deficiency determinations were incorrect. *See* TAX CT. R. 142(a); *INDOPCO, Inc. v. C.I.R.*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Noting the Graffias' lack of evidence—including the absence of crucial financial records, as well as Marilynne and David's failure to testify—the Tax Court found that the purported agreements underlying the losses reported by Preferred Capital "were not bona fide but were shams." In a comprehensive opinion, the Tax Court explained that the Graffias had failed to prove their entitlement to any of the claimed deductions and that they had offered no evidence challenging the Commissioner's determination that David and Amy had unreported income. The Tax Court also ruled that the Graffias were liable for accuracy-related penalties. *See* 26 U.S.C. § 6662(a).

On appeal the Graffias advance several general arguments, all of which are frivolous. First, they contend that the Tax Court "misapprehended" more than 20 material facts. But we review the Tax Court's findings of fact for clear error, *see Carter v. C.I.R.*, 746 F.3d 318, 321 (7th Cir. 2014), and the Graffias have not identified any error, clear or otherwise, in the court's factual determinations. Indeed, most of the Graffias' challenges to the factual findings are frivolous. For example, despite stipulating that during the relevant tax years Preferred Capital had no bank account, cash receipts, invoices, disbursements, or "documentation relating to the net book value" of the company, the Graffias now accuse the Tax Court of reaching "knowingly false" conclusions by stating these facts in its opinion. Relatedly, the Graffias maintain that the Tax Court was required to accept as legitimate their sham agreements with Preferred Capital and Olson because the documents are mentioned in, and attached to, the parties' stipulations. The Commissioner stipulated, however, only that the documents are *authentic*. Authenticity is a precondition to admissibility. *See* TAX. CT. R. 143(a); FED. R. EVID. 901(a); *Chen v. Holder*, 715 F.3d 207, 211 (7th Cir. 2013). But a court is not required to take a document at face value just because that document has been admitted

into evidence: "[A]dmissibility does not compel a finding of believability." *Jacobs v. Marathon Cnty., Wis.*, 73 F.3d 164, 168 (7th Cir. 1996); *see Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 634 (7th Cir. 2011); *United States v. Firishchak*, 468 F.3d 1015, 1021 (7th Cir. 2006); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986).

The Graffias next argue that the Commissioner's lawyers engaged in spoliation of evidence by not attaching "material discovery documents" to the parties' stipulations. They maintain that, because they were proceeding pro se, they did not realize that these documents were omitted until seeing the Tax Court's opinion. The Graffias have included these documents in the appendix to their appellate brief, but we do not consider them. The documents were not attached to the stipulations because they are not *mentioned* in those stipulations, and at trial the Graffias did not offer the documents into evidence. The time to offer them has passed. We do not consider evidence that wasn't presented to the Tax Court. *See Freda v. C.I.R.*, 656 F.3d 570, 573 (7th Cir. 2011); *Hernandez v. HCH Miller Park Joint Venture*, 418 F.3d 732, 736 (7th Cir. 2005); *Hintz v. C.I.R.*, 712 F.2d 281, 286 (7th Cir. 1983).

The Graffias also assert that the Tax Court misapplied the law. But they do not develop an argument and thus the contention is waived. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005).

In closing, we note that frivolous appeals like these waste the court's time and may "deprive litigants with real disputes who raise potentially meritorious arguments of an opportunity to be heard in a timely manner." *United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 762 (7th Cir. 1999). Accordingly, we warn the Graffias that the pursuit of any additional frivolous appeals may subject them to monetary sanctions. *See* FED. R. APP. P. 38; *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002).

The judgment, as to each petitioner, is **AFFIRMED**.