NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAMELA BROOKS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2023-1788

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-16-0430-I-1.

---

Decided:  January 9, 2024

---

PAMELA BROOKS, Moreno Valley, CA, pro se.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.

---

Before PROST, TARANTO, and HUGHES, *Circuit Judges.*

PER CURIAM.

Pamela Brooks was removed from her position as a Tax Compliance Officer with the Department of the Treasury following the agency's determination that she had willfully understated her federal tax liability for tax years 2005 through 2007. Ms. Brooks appealed the agency's removal decision to the Merit Systems Protection Board. The assigned administrative judge issued an initial decision sustaining her removal, and the Board affirmed the initial decision. *See Brooks v. Department of the Treasury*, No. SF-0752-16-0430-I-1, 2023 WL 2436649 (M.S.P.B. Mar. 9, 2023). We affirm.

I

Ms. Brooks began her employment as a Tax Compliance Officer with the Internal Revenue Service (IRS) within the Department of the Treasury in 2003. SAppx. 38.[1] Her duties included examining tax returns and determining taxpayers' eligibility for deductions and exemptions, such as casualty-loss deductions and dependency exemptions. SAppx. 4, 56, 155.

In 2008, the IRS selected Ms. Brooks's own 2006 federal tax return for a tax audit. SAppx. 4. The audit was later expanded to cover her returns for 2005 and 2007. SAppx. 4. In 2011, the IRS determined that Ms. Brooks had underreported her income in 2005, 2006, and 2007 and assessed accuracy-related penalties. SAppx. 5–6, 52–53.

Ms. Brooks petitioned the United States Tax Court for a redetermination of her tax liability for those years. In June 2013, the Tax Court ruled that the IRS had properly disallowed several of her claimed exemptions and deductions and imposed penalties. SAppx. 52–95. The disallowed claimed deductions for 2005 included a $16,088

---

[1] "SAppx." refers to the supplemental appendix filed by the Department of the Treasury in this court with its brief as respondent.

casualty-loss deduction and a $3,500 charitable-contribution deduction. SAppx. 5, 39, 73–82. The disallowed claimed exemptions and deductions for 2006 included a dependency exemption for her son M.B. and a $5,173 charitable-contribution deduction. SAppx. 5, 39, 53 n.2, 73–76. The disallowed claimed exemptions and deductions for 2007 included a dependency exemption for her son M.B., a $3,129 casualty-loss deduction, a $5,200 charitable-contribution deduction, and a $23,000 deduction for state and local taxes. SAppx. 5–6, 40, 53 n.2, 86–87.

In March 2015, an official within a Field Examination Southwest Area unit of the IRS proposed to remove Ms. Brooks from her job based on two charges: (1) willful understatement of tax liability for 2005, 2006, and 2007; and (2) failure to timely pay taxes. SAppx. 98–103. In December 2015, the director of the IRS's Field Examination Southwest Area unit determined that Ms. Brooks's understatement of her tax liability from 2005 to 2007 violated § 1203(b)(9) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685, 720 (codified at 26 U.S.C. § 7804 note). SAppx. 7, 104–05. Section 1203 of the 1998 Act mandates termination of any IRS employee who has made a "willful understatement of Federal tax liability, unless such understatement is due to reasonable cause and not to willful neglect." IRS Restructuring and Reform Act §§ 1203(a), 1203(b)(9), 26 U.S.C. § 7804 note. A mandatory removal penalty applies unless the IRS Commissioner exercises discretion to mitigate the penalty. *Id.* § 1203(c).

The December 2015 determination was forwarded to the Section 1203 Review Board to advise the IRS Commissioner whether to exercise discretion to mitigate the mandatory removal penalty. SAppx. 104. The Section 1203 Review Board decided that a recommendation of mitigation was not warranted. SAppx. 106. On March 23, 2016, the acting director of the IRS's Field Examination Southwest

Area unit removed Ms. Brooks from her position for violating § 1203(b)(9).  SAppx. 107–12.

In April 2016, Ms. Brooks appealed her removal to the Board.  SAppx. 3, 42.  On October 27, 2016, the assigned administrative judge issued an initial decision affirming the agency's action and upholding Ms. Brooks's termination.  SAppx. 3–35.  The administrative judge determined that the agency had proven that Ms. Brooks had willfully understated her tax liability.  SAppx. 9–28.  In doing so, she relied on the full record before her, while also noting that findings by the Tax Court on issues actually litigated in that forum have issue-preclusive (collateral estoppel) effect.  SAppx. 6 n.1.  The administrative judge's finding on the agency's first charge, *i.e.*, willful understatement of tax liability, made it unnecessary to address the agency's second charge, *i.e.*, failure to timely pay taxes.  SAppx. 28 n.7.

Ms. Brooks petitioned the Board for review of the initial decision, but the Board denied the petition and the administrative judge's initial decision became the final decision of the Board on March 9, 2023.  SAppx. 1–2. (We hereafter refer to the administrative judge's decision as the Board's decision.)  Ms. Brooks timely filed her appeal on April 20, 2023, as permitted by 5 U.S.C. § 7703(b)(1)(A). Although Ms. Brooks had presented certain discrimination claims to the Board, she disclaimed further pursuit of those claims.  We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

We will affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."    5 U.S.C. § 7703(c).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a    conclusion."    *McLaughlin    v.    Office    of    Personnel*

*Management*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (quoting *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## A

Ms. Brooks first argues that the Board did not apply the proper legal standards under § 1203(b)(9), which generally requires the IRS to terminate an employee for "*willful* understatement of Federal tax liability, unless such understatement is due to reasonable cause and not to *willful neglect*." IRS Restructuring and Reform Act § 1203(b)(9), 26 U.S.C. § 7804 note (emphases added). The Supreme Court has recognized, in other taxation contexts, that a "willful" violation is a "voluntary, intentional violation of a known legal duty." *United States v. Bishop*, 412 U.S. 346, 360 (1973); *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *Cheek v. United States* 498 U.S. 192, 201 (1991). It has also recognized, in a taxation context, that "willful neglect" in taxation statutes connotes "conscious, intentional failure or reckless indifference." *United States v. Boyle*, 469 U.S. 241, 245–46 (1985). Here, the particular statute at issue, § 1203(b)(9), contains both terms, to be read together and consistently. And the Board recited and applied both the just-quoted controlling legal standards. SAppx. 9–10 (citing *Pomponio*, 429 U.S. at 12; *Boyle*, 469 U.S. at 245–46).

We understand Ms. Brooks to make two arguments that the Board nevertheless erred in the legal standards it applied. First, she suggests that the Board applied a negligence standard. For support, she notes that the accuracy-related penalties upheld by the Tax Court were imposed under 26 U.S.C. § 6662, which can apply based on "[n]egligence or disregard of rules or regulations," 26 U.S.C. § 6662(b)(1); *see also* 26 U.S.C. § 6662(c) (defining

"negligence"), and she adds that the Board "relied on the findings of the Tax Court that justified the imposition of the negligence penalty." Pet'r Inf. Br. at 13.[2]  But in reviewing the Tax Court's findings, the Board merely credited the Tax Court's reasonable-cause determinations underlying its decision to impose accuracy-related penalties. *See*, *e.g.*, SAppx. 12–14, 21.  It did not adopt the negligence standard of 26 U.S.C. § 6662 when making its own finding about the willfulness required by § 1203(b)(9).

Second, Ms. Brooks suggests that the Board must have applied an incorrect standard under § 1203(b)(9) because it said that it did "not believe that" Ms. Brooks "consciously assess[ed] that she was not entitled to claim any particular deduction and then affirmatively cho[]se to do so nonetheless." SAppx. 13.  But we understand that one statement to make a limited point to the effect that the Board was not affirmatively finding a "nefarious" intent, which, the Board said, was not required.  SAppx. 13; *see Agbaniyaka v. Department of the Treasury*, 484 F. App'x 545, 549 (Fed. Cir. 2012) (nonprecedential) ("The [Supreme] Court has rejected the requirement that willfulness requires proof of 'bad faith' or 'evil intent' beyond showing a specific intent to violate the law." (citing *Pomponio*, 429 U.S. at 12–13)).  The Board's opinion, in reviewing the specific tax-return deficiencies at issue and making certain findings adverse to Ms. Brooks, repeatedly makes those findings in terms of the above-quoted standards for willfulness and willful neglect.  *See*, *e.g.*, SAppx. 14, 16, 18, 19, 21, 25, 27, 28.

## B

Ms. Brooks argues that the Board erroneously gave issue-preclusive (collateral estoppel) effect to the Tax Court's

---

[2] For all citations to the informal brief filed by Ms. Brooks in this court as petitioner, the referenced page numbers are those provided by the electronic docketing system.

findings.  Like other tribunals, the Board may apply issue preclusion to a previous adjudication of an issue where "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was 'actually litigated' in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." *Thomas v. General Services Administration*, 794 F.2d 661, 664 (Fed. Cir. 1986).  We discern no reversible Board error regarding the application of this doctrine in the present case.

Ms. Brooks observes that the ultimate legal issues before the Tax Court (*i.e.*, whether her tax-return understatements were due to negligence) and the Board (*i.e.*, the willfulness of her understatements) are not identical.  But issue preclusion is not limited to an ultimate issue.  *See Papst Licensing GMBH & Co. KG v. Samsung Electronics America, Inc.*, 924 F.3d 1243, 1250 (Fed. Cir. 2019).  Several subsidiary issues decided by the Tax Court are directly relevant to whether removal under § 1203(b)(9) is appropriate—specifically, whether Ms. Brooks understated her tax liability and whether any understatements were attributable to reasonable cause.  The issues of understatements of tax liability and of reasonable cause are identical in both inquiries and are necessary to the outcome of both actions, as the existence of reasonable cause can negate liability for understatements of tax liability under both statutes.  *See* IRS Restructuring and Reform Act § 1203(b)(9), 26 U.S.C. § 7804 note; 26 U.S.C. §§ 6662(a), 6664(c)(1).  The Board applied issue preclusion only as to those issues.  *See* SAppx. 6 n.1, 10, 13, 20, 21, 25.

Ms. Brooks also argues that, in her pro se proceeding before the Tax Court, she did not have a full and fair opportunity to litigate the issues decided by the Tax Court because she did not have adequate representation.  To the extent that Ms. Brooks argues that her pro se status itself should preclude the application of issue preclusion, we see

no sound basis for a "pro se litigant" exception to issue preclusion. Other courts have rejected such an exception. *See, e.g.*, *DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013); *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991); *Davis v. United States Steel Supply*, 688 F.2d 166, 177 (3d Cir. 1982) (en banc). So has the Board. *Noble v. United States Postal Service*, 93 M.S.P.R. 693, 698 (2003). And in nonprecedential decisions, we have explained that "*pro se* status does not prevent the application of collateral estoppel," *Flores v. Department of the Treasury*, 25 F. App'x 868, 871 (Fed. Cir. 2001), and that petitioner's having "proceeded pro se . . . does not mean he was not fully represented in that action," *Lundberg v. Merit Systems Protection Board*, 665 F. App'x 870, 872 n.2 (Fed. Cir. 2016).

Ms. Brooks further argues that her ability to litigate fully and fairly in the Tax Court was prejudiced by the fact that a certified public accountant she had retained to represent her died four to five months before her Tax Court trial and, also, by the loss of "original records" in his possession. Pet'r Inf. Br. at 14–15. But Ms. Brooks did not raise this objection before the Board. She also describes how she was able to respond to discovery requests with reconstructed records, attend pre-trial meetings, and produce testimony from three witnesses at the Tax Court trial. Without further specificity or evidence regarding how the loss of her accountant and of certain records prejudiced her, we are not persuaded that Ms. Brooks was not given a full and fair opportunity to litigate before the Tax Court. And in any event, Ms. Brooks does not assert that she lacked a full opportunity to present evidence on all the factual issues before the Board, and she has not shown that the Board's result reasonably would have been different without any reliance on issue preclusion.

C

Ms. Brooks also challenges the factual findings underpinning the Board's willfulness determination, arguing

that the Board "erroneously failed to take into account facts in the record that negate willfulness." Pet'r Inf. Br. at 5–12. Under the proper willfulness standard articulated above, however, the Board's determination that Ms. Brooks willfully understated her tax liability from 2005 to 2007 is supported by substantial evidence.

1

Three of Ms. Brooks's charitable-contribution deductions were disallowed, one in each tax year at issue. At the relevant time, taxpayers could claim such deductions but were required to verify all claimed charitable contributions using cancelled checks, receipts, or other written records. 26 C.F.R. § 1.170A-13(a); SAppx. 73–74, 131 ¶ 25. Additionally, contributions of $250 or more were required to be substantiated with written acknowledgment from the donee organization. 26 C.F.R. § 1.170A-13(f); SAppx. 131 ¶ 27. In 2007, a new law also required taxpayers claiming a charitable contribution to provide a statement by the charitable entity showing total contributions for the year. SAppx. 131 ¶ 26.

Ms. Brooks argues on appeal that she believed her own testimony, logs, and bank statements would suffice to provide the required verifications and that she was unable to comply with the new requirements imposed in 2007 because the donee organization would not provide the required records. Pet'r Inf. Br. at 9–10. But the Board found it not credible, given Ms. Brooks's work as a Tax Compliance Officer, that she failed to understand what documentation was required to substantiate her contributions. SAppx. 15–16, 24–25, 27–28. Substantial evidence supports the administrative judge's determination of willfulness. *See* SAppx. 45, 125–27 ¶¶ 9–19, 135 ¶ 13.

2

Ms. Brooks's dependency exemptions for her son, M.B., were disallowed in tax years 2006 and 2007. In the tax

years at issue, taxpayers could claim an exemption for a qualifying relative whose gross income fell below an exemption limit. SAppx. 130–31 ¶¶ 19–23. In both years, M.B.'s gross income exceeded that limit, but Ms. Brooks nonetheless claimed the dependency exemption without asking M.B. to verify his income. SAppx. 12, 20–21, 87 n.19. The Board, noting that Ms. Brooks had received specific training on dependency exemptions but nonetheless intentionally elected not to ask M.B. about his income, found the improper claim of the dependency exemption to be willful. SAppx. 12–14, 20–21.

For 2006, Ms. Brooks argues that, based on her review of her son's Form W-2, she had no reason to know that her son's income exceeded the limit. Pet'r Inf. Br. at 7. For both tax years at issue, she argues that she thought her son's wages were further reduced by payments to his sister. Pet'r Inf. Br. at 7–8. But she concedes that the actual amount of such payments cannot be established. Pet'r Inf. Br. at 7. These arguments were considered by the Tax Court, *see* SAppx. 87 n.19, and Board, *see* SAppx. 12–13, 20–21, and it is not our role to reweigh the evidence on our own. *See Bieber v. Department of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002); *Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016). Substantial evidence supports a finding of willfulness. *See* SAppx. 122 ¶ 8, 125 ¶ 9.

3

Ms. Brooks's claimed casualty-loss deductions for 2005 and 2007 were also disallowed. The 2005 deduction was related to a 2004 fire that caused smoke damage to a property Ms. Brooks owned. *See* SAppx. 25–27, 46, 58–59. While Ms. Brooks's insurance company was investigating her claim related to the fire, it discovered asbestos at the property and told Ms. Brooks that she must have the asbestos removed to remedy the smoke damage. SAppx. 25–26, 46, 58–59. Ms. Brooks elected not to make the repairs

and instead sold the property in tax year 2004, lowering the home sale price because of the asbestos. SAppx. 26, 46, 59. She then claimed a casualty-loss deduction based on this loss in her home sale price in 2005. SAppx. 26. The Board determined that, as Ms. Brooks had "received training about casualty loss," the claimed deduction "reflect[ed] a conscious, intentional failure to correctly state her tax liability." SAppx. 27.

Ms. Brooks argues that (1) the issues involved in her claimed deduction were "more complex than a typical training case," (2) that the Board misstated the amount of the claimed loss, and (3) that the Board incorrectly understood the tax rules to preclude a preexisting condition from contributing to a casualty loss and to require a casualty loss to be claimed in the year it was sustained. Pet'r Inf. Br. at 12. These arguments are unavailing. As to her first argument, Ms. Brooks fails to provide any explanation of why this claimed deduction was especially complex. At bottom, Ms. Brooks requests that this court simply reweigh the evidence, which we may not do. As there is evidence that Ms. Brooks was specifically trained on this deduction, *see* SAppx. 45, 125–26 ¶¶ 9, 18, we conclude that the Board's willfulness determination is supported by substantial evidence. The record also indicates that the Board correctly understood that the claimed deduction was $16,088. SAppx. 25. Finally, the Board correctly understood and applied the rules and regulations related to casualty-loss deductions. Under the applicable tax rules and regulations, taxpayers are precluded from claiming pre-existing conditions (such as asbestos) as a casualty loss, SAppx. 129–30 ¶¶ 12–14, and casualty losses must be claimed in the year the loss was sustained, 26 C.F.R. § 1.165-1(d)(1).

The 2007 claimed casualty-loss deduction was related to a 2007 fire that damaged a home Ms. Brooks was renting. Ms. Brooks asserts that she suffered harm to some personal property (*e.g.*, furniture, linens), but she had no verification to support the value of her losses. The Board

determined that Ms. Brooks acted at least with "reckless indifference for her eligibility" in claiming this deduction, citing to rules providing that to file a claim on real property, the claimant must be the owner of the property. SAppx. 14. Ms. Brooks argues that the Board misunderstood her claimed deduction to be a claim on real property, rather than personal property. Pet'r Inf. Br. at 10–11. But the record before us lacks evidence to clarify whether Ms. Brooks's claimed deduction was in fact related to real property or her personal property. And in any event, any potential Board error related to the 2007 casualty-loss deduction would not affect the outcome of this appeal. "[W]here more than one event or factual specification is set out to support a single charge . . ., proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge." *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).

4

Ms. Brooks concedes that her 2007 deduction for $23,000 in state-and-local taxes was erroneous. SAppx. 16–17; Pet'r Inf. Br. at 11. On appeal, Ms. Brooks appears to argue that her testimony in the Tax Court established that she acted in good faith with respect to this deduction. Pet'r Inf. Br. at 11. But the Tax Court concluded the opposite: that her "review of her 2007 return should have alerted her" to the error and thus she has "not established that she acted with reasonable cause and in good faith." SAppx. 93. The Board's finding here that this deduction was, at a minimum, willful neglect is supported by substantial evidence. *See* SAppx. 17–19, 46–47.

D

Ms. Brooks recites various grounds for relief that she alleges were improperly disregarded by the Board (*e.g.*, lack of progressive discipline, mitigating circumstances, evidence of rehabilitation). While, under *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981), such factors are

generally relevant in determining the appropriate disciplinary sanction for employee misconduct, they are not applicable in this statutory context.  We have explained in a nonprecedential opinion that, under § 1203(c)(1), "only the Commissioner of the IRS has authority to take 'a personnel action other than termination' against an employee who has violated section 1203(b)(9).  Moreover, section 1203(c)(3) specifies that any determination that the Commissioner makes 'may not be appealed in any administrative or judicial proceeding.'" *Agbaniyaka*, 484 F. App'x at 547; IRS Restructuring and Reform Act § 1203(c), 26 U.S.C. § 7804 note.  Having determined that Ms. Brooks willfully understated her tax liability without reasonable cause, the Board was not permitted to review or mitigate the imposed mandatory penalty.

## III

We have considered Ms. Brooks's remaining arguments and find them unpersuasive.  For the foregoing reasons, the decision of the Merit Systems Protection Board is affirmed.

The parties shall bear their own costs.

### **AFFIRMED**