# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3147

_____

|  |  |  |
| --- | --- | --- |
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| John R. Briasco, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 12, 2011
Filed: May 31, 2011

_____

Before MURPHY and COLLOTON, Circuit Judges, and ERICKSON,[1] District Judge.

_____

MURPHY, Circuit Judge.

John Briasco was charged with possession with intent to distribute more than 50 kilograms of marijuana after a Nebraska state trooper discovered 182 pounds of marijuana in the trunk of the car he was driving. The district court[2] denied Briasco's motion to suppress, and Briasco entered a conditional guilty plea, preserving his right

_____

[1] The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

[2] The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

to raise a Fourth Amendment violation in connection with his traffic stop. On appeal Briasco argues that the state trooper lacked reasonable suspicion to extend his traffic stop after he refused to consent to a search of his vehicle. We affirm.

John Briasco was driving with his girlfriend Claudette Traver west of Kearney, Nebraska on June 3, 2009. They had flown from Boston to Las Vegas, rented a car there, and were driving back to Boston. Nebraska State Trooper Paul Hazard observed their car traveling 75 miles an hour in a construction zone with a 55 mile per hour limit. Hazard stopped them, recording the stop with the camera in his patrol car.

After Trooper Hazard got out of his vehicle, he advised Briasco of the reason for the stop and asked him for his license and registration. Briasco provided his license and the rental car agreement. Hazard noticed two suitcases on the back seat and smelled an "overwhelming odor of air freshener" coming from the car. He testified that the back of the vehicle appeared to be "sagging" or "squatting" from excessive weight. Both Briasco and Traver told Hazard that the trunk was empty.

Briasco was taken by Hazard to his patrol car where he conducted license and criminal history checks. Briasco told Hazard that the couple had just come from Las Vegas, were traveling to Boston, and might be stopping along the way in Lincoln, Nebraska for a poker course or in Chicago to gamble. Briasco was unable to provide the name of a casino for either activity. Briasco admitted to having been in a little trouble "a long time ago" but stated that it was not serious. Databases accessed by Hazard, however, linked Briasco to a criminal history including cocaine distribution and assault and battery with a weapon. He also had an open case involving suspected distribution of marijuana. Traver told Hazard a similar story about their travel plans.

Hazard wrote out a warning ticket for the speeding violation, returned Briasco's license and rental agreement, and allowed him to get out of the patrol car. As Briasco was stepping out of the car, Hazard asked him a few more questions to follow up on

what he suspected were indicators of criminal activity. Briasco repeated his story that he and Traver were driving across the county "to see the beautiful sights." Hazard observed that as he spoke Briasco was getting "cotton mouth" and the carotid artery became visible in his neck. Hazard testified that he could "see [Briasco's] nervousness escalating."

When Hazard asked for consent to search the vehicle, Briasco denied it. Hazard then told him that the couple would be detained until a police service dog could come to conduct a sniff of the vehicle. This occurred eighteen minutes after their car had been stopped. The closest service dog was about 67 miles away, and it took approximately 42 minutes for Trooper Russell Lewis and his dog Bruno to arrive. Bruno walked around Briasco's vehicle and alerted at the lower trunk seam of the car. The officers opened the trunk and found several nylon duffel bags containing marijuana bales. Later testing revealed about 182 pounds of marijuana.

After he was indicted for possession with intent to distribute, Briasco moved to suppress the evidence seized from the car. He argued that the stop violated the Fourth Amendment, Trooper Hazard lacked probable cause to stop the car, there was not reasonable suspicion of criminal activity to justify a search, and their detention was unreasonably prolonged by having to wait for the canine unit to arrive. The district court adopted Magistrate Judge Thomas Thalken's report and recommendation and denied the motion to suppress, concluding that there had been no Fourth Amendment violation.

On appeal Briasco renews his argument that Hazard lacked reasonable suspicion to detain him after he refused consent to search the car. A highway detention is permissible if an officer "develops a reasonable, articulable suspicion that a vehicle is carrying contraband." United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995). To delay a vehicle's occupants after an initial traffic stop has been completed, there must be

"particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Shafer, 608 F.3d 1056, 1062 (8th Cir. 2010) (quotation omitted). In considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and its Fourth Amendment conclusions de novo. Id. at 1061.

The district court found that Trooper Hazard "reasonably had a suspicion of illegal activity" when he detained Briasco based on the strong odor of air freshener in the car, the sagging or squatting of the back end of the vehicle, Briasco's increasing nervousness shown by the developing dryness in his mouth and visible carotid artery, Briasco's imprecise description of his travel plans, and his failure to disclose the full facts about his criminal history. Based on these factors and Hazard's training and experience, the district court determined that Hazard "had reasonable suspicion to hold defendants and the vehicle until a drug search could be conducted."

Briasco argues that some of the court's factual findings are clearly erroneous and that other factors on which it relied would "describe a very large category of presumably innocent travelers." See Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam). Since only a "single pine tree air freshener" was found in the vehicle and Trooper Lewis had not smelled air freshener, Briasco argues that it was clearly erroneous for the court to find that Trooper Hazard had noticed an overwhelming odor after the car window was opened. It was also clear error, he alleges, to find that the vehicle sagged or squatted; he asserts that the video from the patrol car did not show the car sagging as Hazard described. Briasco contends that once those factors are discounted, the remaining "red flags" do not amount to reasonable suspicion. He contends, for example, that all motorists stopped on the highway would be nervous and explains that he "simply chose not to reveal all of the details of his past."

The government responds that the Fourth Amendment analysis must consider the totality of the circumstances including Hazard's training and experience.

-4-

Although each factor may appear innocent when viewed by itself, the government asserts that a combination of factors may give rise to reasonable suspicion. See, e.g., United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002).

We agree. The following factors support the district court's conclusion that Trooper Hazard had a reasonable suspicion Briasco was illegally transporting drugs and that his detention until Bruno arrived did not violate the Fourth Amendment. The car had a strong odor of air freshener, and the travelers claimed the trunk was empty even though there was luggage on the back seat and the car's rear end was sagging. Briasco became increasingly nervous as shown by his cotton mouth and the visible pulsation of his carotid artery. The travelers gave only vague descriptions of how they planned to travel back to Boston. Briasco failed to give full information about his criminal history, which included cocaine distribution and an open federal case for suspected marijuana distribution. In Hazard's experience drug traffickers often fly cross country to obtain drugs and then drive them back to their own locale. Though any one of these factors alone would not rise to reasonable suspicion, when combined and in light of Hazard's training and experience, they created a reasonable, articulable suspicion that Briasco was carrying contraband. See Bloomfield, 40 F.3d at 918.

No clearly erroneous factual findings by the district court have been identified. The strong odor Hazard smelled could have been made by one single pine tree air freshener and could have dissipated by the time Lewis arrived. The patrol car's video neither confirms nor refutes Briasco's claim that the trunk of the car was not sagging because of the angle of the picture. The district court believed Hazard's testimony about it, and this finding of fact was not clearly erroneous. Because Hazard had reasonable suspicion that Briasco was illegally transporting drugs when he was detained, there was no Fourth Amendment violation.

Accordingly, the judgment of the district court is affirmed.

———————————————